Good morning everyone. Good morning. Good morning Judge Rovner. Good morning. Good morning Judge Brennan. Good morning Judge Laney. Good morning Judge Rovner. Judge Rovner you're not missing warm weather just so you know. It's three degrees here and we have no heat. Oh no well I think you've got us beat. Well we're here today for oral arguments we're going to begin with case number one this is appeal 24-1534 United States v. Carbajal-Flores and we'll begin Ms. Steindorf with you. May it please the court. Maggie Steindorf on behalf of the United States. The district court erred when it determined that section 922 g5a is unconstitutional as applied to this defendant because first there should be no as applied challenges to 922 g5 only facial challenges which the district court properly upheld and second even if as applied challenges are allowed there is no question that 922 g5 is constitutional as to this defendant. Here specifically the district court erred when it found defendant was non-violent when in fact the defendant shot a firearm seven times at a passing car without provocation and tried to shoot at a second passing car shortly thereafter. Ms. Steindorf is there anything about the Supreme Court's decisions in Bruin or Rahimi that undermine this court's conclusion in Mesa Rodriguez that some illegal aliens can fall within the plain text of the people? I think that Bruin and Rahimi again emphasize that the right the second amendment right belongs to law-abiding citizens repeatedly referred to the right as belonging to citizens or Americans. Mesa Rodriguez did engage though with the second amendment's text correct? It did but in Mesa Rodriguez the court referred to the Supreme Court's references in Heller and McDonald as passing references. I think with the addition we have now here of Bruin and Rahimi again referring to the right as belonging to citizens or Americans that that changes the lens through which we well you agree I take it that we would not have to revisit our holding in Mesa Rodriguez in the event that we conclude that 922 g5a survives the Bruin inquiry? That's correct this court could conclude that 922 g5a survives based on the history and tradition of disarming here the government argues disarming untrustworthy adherence to the law and those outside of the political community. The court could within its precedents find that non-citizens are part of the people and move on to step two of the of the Bruin and Rahimi inquiry. If we focus on the people how does the Supreme Court's opinion and vertigo your cura's impact our analysis? There I know the court was looking at the fourth having a connection with the community it did not talk about people in terms of citizens or Americans. Yes it did refer to those who are part of the political community or national community just as Heller did in referring to the people as members of the political community. I think the the distinction that we can make here would be the scope of the political community as understand those individuals who have second amendment rights. But that's my question I guess how given the language from the Supreme Court in that opinion how could we conclude that the people in the second amendment does only pertains to United States citizens because that case was much broader and still remains good law. I take your point that the people for purposes of the amendment may include certain non-citizens and I also take the point that the fourth amendment the second amendment first amendment all use the term the people. I would you know also argue that the term the people appears in the ninth amendment and the tenth amendment and certainly in the tenth amendment we understand it to mean only the rights that are left for citizens here. So is it the government's position that the people has a different meaning across the first second and fourth amendments? Yes that the scope of the I would say that the the meaning of the people is members of the political community but who are members of that political community for purposes of each amendment differs that would be the government's position. Just so it's clear we're only talking here about g5a not g5b correct? That's correct your honor. You know you've criticized Judge Coleman's person-specific risk assessment but if we were to conclude that the second amendment does not permit the government to ban possession by any and all undocumented immigrants might it still do you think be possible to distinguish between aliens with a criminal record and those without such a record or aliens with a history of violent crimes and those with only non-violent criminal histories? What are your thoughts? It's the government's position position that there's no proper as applied framework you know specifically within the context of section g5a because legislatures historically categorically disarm groups of people that would not abide by the laws of the community or or were outside of that community and so especially within this context where there's no dispute that the defendant is a non-citizen unlawfully in the country because he falls within the category and because congress has categorically categorically disarmed the category the government's position that there's no proper as applied framework here. In the second step of Bruin were to discern the how and the why for purposes of determining whether there's a historical analog is it fair to characterize the why as a lack of allegiance to the sovereign? I think the why could be characterized in that way are you speaking of the historical laws? I am. That certainly is the why of the the loyalty law specifically. What about if the same law though is attempted to be utilized say in a g1 context where we're talking about a dangerousness analysis versus a allegiance analysis does that present a problem? I think that's where Rahimi teaches us that we're looking for principles of the laws and so by the government proffering the loyalty laws I take your question to be in both the g1 context and the g5 context you know there is the common thread here of felons not abiding by the law and those unlawfully in the country also you know not authorized to be in the country. So because Rahimi teaches us to look at the the principles of the historical tradition certainly both can be proper analogs in both both circumstances. And you and you know historically we are you know I take it it's the tradition of borrowing firearms possession by those individuals who have not demonstrated trustworthiness or loyalty to the government. Yes your honor that is that is one of the uh the government proffered kind of two historical traditions one of them is uh you know most evidenced by the loyalty laws uh those that will not uh that are untrustworthy adherence to the law. Is it the government's position that g5 is a permanent disarmament? And if so how is that historically justified given many of the laws that you've identified there was always a way to restore your rights? It is not the government's position that g5 is is a permanent band. The government has argued here that uh the conditions uh being a non-citizen and being here unlawfully in the country those are not permanent conditions as there are pathways to lawful citizenship. But I would to I think your second the second part of the question here as to you know specifically loyalty laws you mentioned there are exceptions to to regaining your arms here I think the equivalent in the section g5 context is the law lawful pathway to citizenship. And would it have to be lawful pathway to citizenship or lawful pathway to being in this country? Excuse me it would be lawful status. If we use some of the same laws though I'm getting back to the g1 g5 question if we use some of the same laws um with regard to the y component on the second step is that going to backdoor us right back into an as applied for this type of statute? Um I to build out the question a bit more the status concept of being a felon a convicted felon can have a broader variety than say the status concept of being an undocumented citizen. And I think that would be the the government's argument is is here g5 is really only limited to um people who are unlawfully in the non-citizens who are unlawfully in the country. Um it does not apply to all non-citizens as you know perhaps you could make the analogy to the category of of the felon. Um and so here especially I think categorical categorically it's appropriate in the historical tradition supports um being able to disarm that category of of individuals. Uh if there are no further questions the government would request uh to reserve the remaining time for rebuttal. That's fine thank you Ms. Steindorf. Mr. Briskman will now move to you for argument on behalf of the appellee. Thank you. Good morning your honors. May it please the court. My name is Jacob Briskman and I represent Heriberto Carvajal Flores. This court in Mesa Rodriguez correctly held that undocumented folks can be part of the people and nothing in Bruin or Rahimi takes away from that the court below was correct in ruling the statute is unconstitutional as applied to my client but the court below was incorrect to reject our facial challenge. Turning to the as applied the test articulated in Mesa Rodriguez is the people refers to a class of persons who are part of a national community or who have developed sufficient connection with this country to be considered part of that community. My client easily passes this test father to U.S. citizen kids, husband to a U.S. citizen wife, attending public schools in Chicago starting at the age of 10. He is part of the people. The government wants the test to be political community closely associated with U.S. citizenship and the electorate. They do this by selectively choosing descriptive rather than prescriptive phrases from Heller, Bruin, and Rahimi. Mr. Briskman before you go too much further can I just clarify are you appealing in challenging both the facial and as applies or are you focused on as applied? Well certainly we want we I know you're doing as applied are you also appealing the facial determination? Yes. Or I guess the government has appealed but are you arguing that 922 g5 is facially unconstitutional? Yes we are. So is it your position then that all unauthorized aliens are among the people? Well the way that the Supreme Court has determined whether undocumented folks have constitutional protections is if they've come within the territory of the United States and they've developed substantial connection. So what about those who do not have substantial connections? Is it your position that they would nonetheless be part of the people under the second amendment? Well certainly they can prove to be part of the people if they do develop substantial. But that's not the question it's a little bit different. If they do if somebody just comes across the border has no family here no connections here and when he crosses the border he has a firearm. He's an undocumented alien. Is he part of the people? Your honor there would have to be a deeper historic deeper inquiry into. I've given you all the facts. There's no connection. There's he crosses for the first time ever crosses the border illegally. He's not here legally. He's undocumented hasn't started any kind of citizenship process. Is it your position that he would be part of the people for the second amendment? Well I think Verdugo requires a little bit more in terms of more connection to the country. Okay so you would agree that he is not part of the people if he has no connection to the country. I know you're resisting answering that I know why because if if there are circumstances where an unauthorized immigrant is not part of the people then how can the law be facially unconstitutional? Because we have this other inquiry from Bruin talking about. But it's a two-step if you fail at the first step you don't get to the second step. So if he if there are factual scenarios where someone would not fall within the text of the second amendment to obtain protection under the second amendment then under Bruin there's no second amendment right. Well we think the first step of Bruin is that if the plain text of the second amendment covers an individual's conduct. So we first the first step we talk about. But that's not what the people is about. The people certainly. That's defining a class of individuals and if you fall outside of the people and don't have the second amendment protection if there are some individuals who fall outside of the people then it can't be facially unconstitutional. Well we we think that Bruin's first step talks about the conduct of an individual and we think that the plain text of the second amendment covers can cover the conduct of an individual that's not part of the people. And then we move to. So you think even if you're not part of the people that the second amendment protects that you could still get second amendment protection. I think that's counter to what the Supreme Court has said. Well our we think that there's needs to be an historical analog as to the why and the how. That's the second step. She's on the first step. In terms of there are certain individuals who can come in within the country and not be part of the people. Okay. Mr. Gristman tell me this. Is it at all workable for courts to engage in the sort of person specific constitutional inquiry that Judge Coleman conducted with respect to Mr. Caraval Flores? Isn't the inevitable result just going to be a crazy quilt of fact specific and and potentially inconsistent holdings? Well the judge at the district court was trying to hit a moving target here. In terms of this court has not articulated a test of who among the people can be disarmed. The judge took a reasonable view of the facts taking into account the night the night of the arrest all of the circumstances surrounding the arrest as well as my clients pre and post arrest history. So if this court were to articulate a test certainly we would be in agreement if this court could remand it for a an evidentiary hearing so the court could district court could apply the test in the first instance. How can I'm sorry go ahead Judge Roper. No are you going to follow up on that? Yeah go ahead you follow up and then I'll follow up on you. No go ahead go ahead. How can a trial judge in a criminal case hold an under federal rule of criminal procedure 12 hold an evidentiary hearing where she would be making a determination of something directly relevant to guilt or innocence? Here it would be the self-defense. I don't see how a district court has the authority to do that. Well we could think that the court could take an all things considered approach in terms of he's dangerous a dangerous person taking into account all of his history taking into account his. Why does dangerousness matter under g5? Well we think dangerousness matters because that's what the basically the court in Rahimi talked about whether someone. That wasn't a g5 so it is it your argument that anytime you assess or have an as applied challenge in the 922 g context you have to look at dangerousness. Certainly we think that there's there are two tests there's the test first for who is a member of the people and then there's a test for who among the people can be disarmed and we think that the court here did take an all things considered approach talking about my client's history and these in the court. Yeah oh even look even accepting that his criminal history was non-violent couldn't one argue that the nature of some of his prior offenses including you know reckless conduct obstructing identification demonstrate that he was not a trustworthy candidate for gun possession and in any event was it really correct do you think to say that the circumstances of the possession of the gun on the night of the arrest were non-violent? I mean firing a gun in public at passing cars even if the shots were meant as a warning doesn't strike me as non-violent and we we have certainly seen enough of this sort of thing where innocent people are literally mowed down. The district court took a look at this the district court had the full video in front of in front of the court and took a look at all the circumstances surrounding that night and stripping people of second amendment rights because of a criminal history or because they are not responsible are not reasons supported by case law as Rahimi has shown. I think it's important here to contrast my client's background with that of Mr. Rahimi which the supreme court took pains in saying that 922 g8 was constitutional as applied to him because of its limited duration. Mr. Rahimi was found dragging the mother of his child to a car causing her to hit her head on a dashboard and then firing a gun as she tried to escape coupled with a series of other incidents involving a shooting and threatening other people with a he's contended since the beginning that these were warning shots at a specific vehicle perceived as a threat after the police had come by telling the neighborhood watch to arm themselves. It's our position that 922 g5 is unconstitutional as applied to my client. Um does it make any difference whatsoever that this was not his neighborhood? Well while he was living in Cicero during that period he went to grammar school in Little Village. He lived in Little Village most of his life and he continues to live in Little Village now. This this idea that it was not his neighborhood is not taking all of his history into account. While he wasn't living in Little Village at that specific time that's where he's that's where he's from and that's where he continues to live now. In terms of the government's test the government's test is not supported in terms of who is member of the people is not supported by by case law. In terms of as we mentioned the supreme court has decided that undocumented folks have first amendment protections, fourth amendment protections, fifth amendment protections when they have come within the United States and developed substantial ties. And yes my client does have a criminal convictions but the nature of his criminal convictions were looked at by the district court and they were not violent in nature. I mean these reckless conduct misdemeanor convictions, possession of cannabis, driving on a suspended license and obstruction identification are not reasons for someone to be stripped of their second amendment rights. Can you just tell me what his sentencing exposure would be if we were to reverse the dismissal of the indictment? If you looked at what the likely guidelines range might be? I think it was a level this is a level 14 I believe so I believe it's in the 18 month range with no other extenuating circumstances. Just a 922 g5 I believe is a level 14. Thank you. And we just don't think that there is a 922 g5 while certain undocumented folks who come within the country may not be part of the people we just don't think 922 g5 is has a historical analog as to the why or the how. I mean this is your honor talked about this is a total ban on undocumented folks with no exceptions whatsoever and all of the laws cited to by the government all had an individualized mechanism for the application for relief whether it was taking an oath. Why wouldn't becoming a citizen or starting the process to be here legally be that exception here that out for the individuals? Well the the process this is where I think the amici and the government get it wrong. It's not that just someone can say I want to be a citizen and then swear allegiance or or start an application. But there's still a method for it? Not for everybody not for everybody there's not. There are statutory caps that take decades many times for people to become residents and also there are things called permanent bars that bar people permanently from becoming residents. So this in fact is a permanent ban for many folks in this country and it certainly is a total ban and we don't see an historical analog that bans people with no exception whatsoever. Whether as we were discussing whether it's the loyalty oath getting special permission from a master or in the in the context of self-defense. There are outs in every one of the laws the government cites and that's one of the things that the the surety laws in in Rahimi that were approved. The surety laws in Rahimi gave room for someone to even who was found to be dangerous to have an exception for self-defense. So there in in terms of the why and this court in Bevis has observed that the broader the restriction the closer the analogical fit must be and here this is the broadest restriction as you can get and there's not a close and so therefore this court should require a very close analogical fit and here there's just simply is not in terms of the how. In terms of the how this is a total and in many cases for many folks it's a permanent ban and in terms of the why the government justifies based on horribly discriminate the comparable justifications the government points to are based on horribly discriminatory laws that this court should not use as a measuring stick when defining the right and also this court has determined my client in Mesa is part of the people can be part of the people and the laws the government cites to simply are not folks who were determined to be part of the people. Thank you Mr. Briskman. Ms. Steindorf will go back to you now for rebuttal argument. Even under the district court's version of an as-applied test 922 g5 is constitutional as applied to this defendant. Here specifically the district court erred when it found defendant was non-violent when as we've discussed he in fact shot a firearm seven times at a passing car and attempted to do the same thereafter when the district court found relevant defendants lack of felony convictions but did not consider defendants misdemeanors which included reckless conduct and especially relevant in the g5 context obstructing identification and the district court incorrectly concluded that based on defendants post-indictment pre-trial release conduct that he was not a risk of danger if armed with a firearm. As to, excuse me, I'm sorry Judge Rovner did you have a question? Oh I have a call. Oh I apologize. As to the appellee's contention that defendant was just firing warning shots and that the police had told the individuals there to to arm themselves I'd first note that those facts weren't found at the district court but even if true the defendant in fact conceded that he was armed before the alleged police order to arm himself and again even if true his his conduct was such that he poses a risk to the public and can constitutionally be disarmed under 922 g5. If there are no further questions the government requests the court reverse and remand to the district court. Thank you Ms. Steindorf. Thank you Mr. Briskman. The case will be taken under advisement.